IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DAVID ANTHONY STEWART,**

   **Petitioner,**

**v.**              **Civil Action No. 3:08CV170**
                   **Criminal Action No. 3:07CR16**
**UNITED STATES OF AMERICA,**     **(JUDGE BAILEY)**

   **Respondent.**

## REPORT AND RECOMMENDATION THAT §2255 MOTION BE DENIED

### I. Introduction

On November 17, 2008, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] The Government filed its response on December 2, 2008.[2] Petitioner did not file a reply to the Government's response.

### II. Facts

#### A. Conviction and Sentence

On May 24, 2007, petitioner signed a plea agreement in which he agreed to plea guilty to two out of four counts of a four-count indictment: Count 1, intent to distribute 98.7 grams of cocaine base in violation of Title 21, United States Code, Section 841(a)(1), and Count 4, felon in possession in violation of Title 18, United States Code, Section 922(g)(1).[3] In the agreement, petitioner also

---

[1] Dkt. No. 46.

[2] Dkt. No. 52.

[3] Count 2, possession with intent to distribute controlled substance (approximately 31.43 grams or more of MDMA) in violation of Title 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and Count 3, possession of a firearm in furtherance of drug trafficking, in violation of Title 18, U.S.C., §§ 924(c)(1)(A) and 924(c)(1)A)(i), were dismissed

1

waived his right to an appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions hereto made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)1(A)(ii) of the Federal Rules of Appellate Procedure.

(Dkt. No. 31 at 4).

On May 24, 2007, petitioner, then aged 24 and having completed high school and some college, entered his plea in open court. (Dkt. No. 50 at 4). During the plea hearing, the Assistant U.S. Attorney read aloud in open court each paragraph of the plea agreement, including the paragraph 10 *supra.* The Court then asked petitioner whether he and his counsel had reviewed the plea agreement before he signed it, and petitioner stated that they had. (Id. at 13). The Court specifically asked petitioner if he understood the waiver of his appellate relief rights but did not ask petitioner about the waiver of his post-conviction relief rights. (Id. at 12-13). The Court then asked petitioner's counsel if he felt that his client understood the waiver of his appellate rights but did not ask petitioner's counsel about the waiver of post-conviction relief rights. (Id. at 13). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 18-20). During the plea

---

at the sentencing hearing on November 20, 2007. (Dkt. 51 at 16).

hearing, the Government presented the testimony of Patrolman Jonathan Quinnam to establish a factual basis for the plea. (Id. at 20 - 23). The petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, petitioner advised the Court that he was guilty of Count 1 of the indictment. (Id. at 24). Petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 24 -25). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id. at 25). Petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id.). Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 24 -25).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that petitioner understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id. at 26). Petitioner did not object to the Court's finding.

On November 20, 2007, a sentencing hearing was held in which petitioner was sentenced to 121 months imprisonment for Count 1 and 120 months imprisonment for Count 4, to be served concurrently. (Dkt. No. 51 at 12) Petitioner was found to have a total offense level of 31 and a criminal history of II; the applicable sentencing guideline range was determined to be 121-151 months. (Id. at 6). Petitioner's counsel moved the court to vary from the guidelines by one month, permitting a minimum sentence of 120 months and the Court did not grant this motion. (Id. at 8-12). Petitioner did not object to these findings. Further, at the conclusion of the hearing, petitioner declined the opportunity to have the Court file an immediate notice of appeal on his behalf. (Id. at 17).

### B. Direct Appeal

Petitioner did not pursue a direct appeal.

### C. Federal Habeas Corpus

Petitioner only raises one ground in his § 2255 motion: that his counsel was ineffective for failing to appeal the denial of his Motion to Dismiss or Suppress Evidence. Petitioner concedes that in his plea agreement, he knowingly and voluntarily waived his right to appeal his actual sentence, but claims his counsel "did not object to provision on basis [sic] it did not waive the right to appeal Petitioner's denial of his motion to dismiss[.]" (Dkt. No. 46, Attach. 1 at 6). Petitioner contends that before he entered his plea, he specifically requested that his counsel appeal the denial of his Motion to Dismiss/Suppress, but his counsel did not, thereby "abandon[ing] . . . Petitioner's only defense to have the . . . Fourth Circuit . . . make a determination whether. . . Petitioner's Fourth Amendment Right [sic] . . .were violated by way of a warrantless search, which was inherently prejudicial[.]" (Id.). Therefore, petitioner claims, his appellate waiver was not knowing and voluntary. Somewhat incoherently he then goes on to assert that ". . . given the inspissate brumes generated by the guideline, counsel can hardly assume that a defendant who has pled guilty does not wish to appeal his sentence. No doubt the situation could be different if the plea agreement itself waived the right to appeal." (Id. at 7). Petitioner requests that he be granted an evidentiary hearing and be appointed counsel for that purpose, that his sentence be vacated and his case be remanded for re-sentencing.

The Government contends that petitioner knowingly and voluntarily waived his right to appeal the denial of the Motion to Dismiss/Suppress in his plea agreement, and his claim that he and his very experienced criminal defense attorney believed that, despite his waiver, he was

4

somehow reserving or retaining the right to appeal the suppression/dismissal issues after entering an unconditional guilty plea is sheer nonsense, factually and legally, and a fatuous, disingenuous attempt by petitioner to get another unwarranted bite at the apple. The Government asserts that petitioner entered into his plea agreement knowingly and with full knowledge that the entry of such plea would waive his right to appeal his conviction. As proof thereof, the Government attached Exhibit A to its response, a 3-page sworn, notarized affidavit from petitioner's counsel, which provides ample, detailed information from the record, from counsel's independent recollection and from his contemporaneous notes, refuting petitioner's contention that he requested his counsel appeal the denial of suppression/dismissal issues and his lack of awareness of the consequences of his waiver at the time of his plea. Finally, the Government contends that petitioner fails to satisfy the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984) and Lockhart v. Fretwell, 506 U.S. 364 (1993).

**D.** **Recommendation**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner's claims are without merit or procedurally barred.

### III. Analysis

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255

5

requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

A. **Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel."

Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel (IAC) claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the

7

> appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.

Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

During the Rule 11 colloquy in the case at hand, the Court specifically inquired whether

petitioner understood his waiver of appellate rights contained in the plea agreement. (CR Dkt. 50, Plea Hearing Transcript at 12 - 13 and 18). This inquiry appropriately established that petitioner knowingly and voluntarily waived his right to appeal. However, the Court did not inquire of petitioner whether petitioner understood that, under the plea agreement, he was also waiving his right to seek post-conviction relief by filing a habeas corpus petition under Title 28, United States Code, Section 2255. Therefore, as the preceding review of cases indicate, petitioner did not validly waive his right to file this instant petition and accordingly, it should be given full consideration.

## B.  Procedural Default

"[A] final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. Bousley v. United States, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." United States v. Mikalajunas, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." Id. Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. See Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." Mikalajunas, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." Id. at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." Schlup v. Delo, 513 U.S. 298 (1995).

In this case, ground one should have been raised on direct appeal and is now procedurally defaulted, unless the petitioner can show cause and prejudice for the default. In his memorandum in support of his petition, the petitioner impliedly asserts that "cause" exists because counsel failed to file a direct appeal of the adverse ruling on the suppression of evidence motion, permitting the evidence seized in a warrantless search to be used against him, "which was inherently prejudicial." Accordingly, petitioner's claim will be given full review.

C. **Ground One - Whether Counsel's Performance was Ineffective for Failing to Appeal the Denial of his Motion to Dismiss or Suppress Evidence after Petitioner Requested That it Be Done**

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors

11

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

Here, petitioner alleges that, prior to the time he entered his plea, he directed his counsel to file an appeal with regard to the denial of his Motion to Dismiss or Suppress Evidence. He claims that counsel "abandoned" the opportunity to do so, thereby prejudicing him. He admits that his consent to the provision in his plea agreement waiving his right to appeal his sentence was "knowing and voluntary," but, rather incredibly, now claims that his very able and experienced criminal defense counsel did not object to that provision when petitioner entered his unconditional plea, because both he and his counsel believed that that provision did not waive the right to appeal the suppression/dismissal motion issues. Petitioner argues that he pled guilty and only waived his right

12

to appeal his sentence, but not, by inference, his conviction, that he never consented to the failure to file a notice of appeal of the denied suppression/dismissal motion, and that he was therefore denied effective assistance of counsel.

On May 10, 2007, petitioner filed his motion to suppress the evidence seized in the traffic stop incident to his arrest, or, in the alternative, a motion to dismiss the charges against him.

On May 14, 2007, a hearing before the undersigned was held on the motion. Arguments were heard, the motions were taken under advisement, and on May 16, 2007, a report recommending denial of the motion was filed by the undersigned. The report specified that any party could file objections to the Report and Recommendation (R&R) within 10 days.[4]

On May 21, 2007, a status conference, originally scheduled as a pretrial conference, was held with the district judge. Petitioner was present in person and through counsel, and informed the Court that a plea agreement had been reached. A Rule 11 hearing was scheduled at a later time, and the Court then proceeded to review the pending R&R on the denied motion to suppress/dismiss. Although the period had not yet expired for parties to raise objections to the report, a *de novo* review of the pleadings and the record was held. An Order was entered the following day, adopting the R&R denying petitioner's suppression/dismissal motion.

Two days later, on May 24, 2007, petitioner, accompanied by counsel, entered his plea before the undersigned. In his colloquy at the Rule 11 hearing, in response to the Court's questions regarding petitioner's understanding about the rights he was giving up by pleading guilty, petitioner testified thus:

THE COURT: *Further you are giving up the right to have your lawyer move to suppress any*

---

[4] Neither party ever filed any objections to the Report and Recommendation.

*evidence you believe was illegally obtained*, the right to remain silent, and your exercise of your Fifth amendment right to remain silent would not be held against you. The right to have the Government attempt to prove the charges against you beyond a reasonable doubt, and the right to a unanimous verdict from the jury? Do you understand that you are giving up those rights?

THE DEFENDANT: Yes, Sir.

. . .

THE COURT: Do you understand there will be no trial, no jury verdict, *no findings of innocence or guilt by disputed evidence* presented to a jury or to the Court?

THE DEFENDANT: Yes, Sir.

(Plea Hearing Transcript, Dkt. No. 50 at 19 - 20) (emphasis added).

Finally petitioner testified that he was in fact, guilty of the crimes charged:

THE COURT: . . . How do you plead to the counts contained in Counts 1 and 4 of the indictment returned against you . . . Guilty or not guilty?

THE DEFENDANT: Guilty, sir.

(Id. at 24)

. . .

THE COURT: And are you in fact guilty of the crime charged in Counts 1 and 4?

THE DEFENDANT: Yes, sir.

(Id. at 26).

Petitioner further testified that he was satisfied with his attorney's handling of his case:

THE COURT: Has Mr. Mills' law firm done a good job representing you in this matter?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything you think they should have done that they didn't do, or anything that they did improperly on your behalf?

THE DEFENDANT: No, sir.

(Id. at 25).

On November 20, 2007, petitioner was sentenced by the District Court Judge to concurrent sentences of 121 months on Count 1 and 60 months on Count 2. At no time during the hearing did petitioner raise any objection to any adverse ruling by the Court or request an appeal, even when specifically asked if he wished to do so:

THE COURT: . . . I'll advise you that you have the right to appeal the judgment of this Court insofar as that judgment may be appealable. Any notice of appeal must be filed with the clerk not more than ten days from the date of entry of the judgment order . . . If you so request, the clerk of this Court will prepare and file forthwith a notice of appeal on your behalf. Do you wish to have a notice of appeal filed on your behalf?

THE DEFENDANT: No, Sir.

(Sentencing Hearing Transcript, Dkt. No. 51 at 17).

Finally, in the sworn, notarized affidavit provided by petitioner's counsel to the Government, counsel stated that, over the course of his representation of petitioner, he had numerous office meetings and phone conferences with petitioner where strategy, legal options and consequences were thoroughly and repeatedly discussed; that he met with and briefed petitioner before each of the various hearings and counseled him on his options, and that prior to the May 21, 2007 status conference, he specifically counseled petitioner about both his right to appeal the R&R denying his motion to suppress/dismiss as well as his right to maintain his 'not guilty' plea and proceed to trial. (Dkt. No. 52-1 at 1 - 3). Counsel stated petitioner fully understood that by accepting the plea agreement with its concomitant benefit of dismissal of the other two counts, he was forgoing the right to litigate the adverse ruling on the evidence suppression. Further, he specifically recalled that both petitioner and his wife were "relieved and satisfied that the government was willing to dismiss the five (5) year consecutive sentence gun count (Count 3)." (Dkt. 52-1 at 2). Counsel further stated

15

that he informed petitioner that if he wished to go forward with an appeal of this suppression/dismissal ruling he would have to withdraw his guilty plea and continue with a trial, that petitioner fully understood this and still decided to go forward with his guilty plea. Id. Counsel attested to his representation of petitioner at his debriefing on November 16, 2007, where, once again, he discussed the plea agreement and potential sentencing, and was also present with petitioner at the November 20, 2007 sentencing hearing *supra*. Counsel further attested to the fact that petitioner personally confirmed, both to him as well as on the record, that he did not wish to appeal his sentence, and stated that his contemporaneous notes of that hearing confirm their discussion of this issue. It was counsel's opinion that petitioner was aware that he had the right to maintain an appeal of the denial of the suppression/dismissal motion as well as his right to appeal his sentence, but that he voluntarily waived both after receiving legal counsel. (Id. at 2 - 3).

To demonstrate a Sixth Amendment violation by virtue of counsel's failure to file an appeal, petitioner must first prove that counsel was ineffective, and then, that but for counsel's ineffectiveness, an appeal would have been filed. Roe v. Flores-Ortega, 528 U.S. 470 (2000). "If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id. at 478. Here, petitioner and his counsel provide radically differing accounts of the request for an appeal, and thus an analysis of the comparative credibility of their assertions is indicated.

Here, petitioner's claim that his counsel ignored his request to appeal of the denial of his suppression motion prior to entering his plea is merely an unsupported allegation, easily controverted by a cursory review of the record. The suppression of evidence motion was fully

litigated, first before the undersigned in the May 14, 2007 motion hearing, before the R&R denying it was entered on May 16, 2007. Petitioner never filed an objection to the R&R denying his suppression motion; instead, in the May 21, 2007 status conference before the district judge, he indicated his willingness to enter a plea on the charges. Despite that, the Court still reviewed the suppression motion and record *de novo*, before the R&R denying it was entered the following day without objection by either party; two days after that, petitioner formally entered his guilty plea. By contrast, counsel's detailed sworn affidavit is entirely consistent both with the record and with petitioner's in-court statements; it clearly supports the finding that not only was petitioner repeatedly and fully advised of his rights prior to, during and after he entered his plea, and again at sentencing, he not only understood that he was waiving his right to appeal adverse evidentiary rulings by entering his plea, he also declined to file an appeal when given the opportunity to do so.

An affiant's inclusion of specific details is a strong indicator of his or her credibility, and that. credibility determinations may be made on a written record without live testimony. Strong v. Johnson, 495 F.3d 134, 139 (4th Cir. 2007). Further, a court is permitted to discount unsupported or conclusory statements that appear in affidavits. United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004). Habeas corpus petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849 (1994). The petition must come forward with evidence that the claim has merit. Nickerson v. Lee, 971 F.2d 1125 (4th Cir. 1992) *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts, v. Angelone, 166 F.3d 255 (4th Cir. 1999). Allegations amounting to nothing more than conclusions provide no basis for an evidentiary hearing. Id.

Petitioner has failed to demonstrate the cause and actual prejudice required under Mikalajunas that would permit a collateral attack of his conviction or sentence based on errors that

could have been, but were not pursued on direct appeal. Further, he has failed to show that any miscarriage of justice will occur from the court's refusal to entertain this collateral attack: he does not allege, nor has he proven actual innocence. His own statements as to his actual guilt of the crimes charged at his plea hearing defeat any possible claim of actual innocence needed to prove miscarriage of justice. Further, he cannot prove either prong of the Strickland analysis, and so he has also failed to prove his ineffective assistance of counsel claim by the preponderance of evidence required. His claim fails legally and factually. His appeal of the adverse ruling on the suppression motion is procedurally barred as he chose not to raise it on appeal; he cannot now use the vehicle of a habeas corpus petition as an end run around his failure to do so. No evidentiary hearing is required.

## IV. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion, **DENYING** his request for an evidentiary hearing with appointment of counsel as moot, and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: August 26, 2009

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE